Aldon L. Bolanos, Esq., SBN. 233915
Law Offices of Aldon L. Bolanos, Esq.
Sacramento, CA 95814
Ph. 916.446.2800
Fx. 916.446.2828
www.aldonlaw.com

Attorneys for Plaintiff Kevin SINGH

United States District Court

Eastern District of California

| | |
|---|---|
| Kevin SINGH,<br><br>Plaintiff,<br>          vs.<br><br>Bank of America, N.A., Recontrust Company, N.A.,<br><br>Defendants. | Case No. 2:13-CV-00729-MCE-AC<br><br>Application for Preliminary Injunction<br><br>Date: April 29, 2013<br>Time: 10:00 a.m.<br>Ctrm: 7 |

**1.   Prefatory Statement**

Plaintiff Kevin Singh, through his counsel, hereby applies for a preliminary injunction to prevent the sale of his home during the pendency of this action.

The basis for this application is that defendant is engaging in wrongful foreclosure proceedings in violation of the California Homeowners Bill of Rights. Specifically, Mr. Singh is the victim of "dual

1

tracking" in which a lender engages in loan modification negotiations while at the same time moving toward a non-judicial foreclosure sale.

Previously the Court granted a temporary restraining order to prevent the sale of the home, which had been scheduled for April 22, 2013.  Now, the home sale has been rescheduled for May 20, 2013.  See Bolanos Declaration, concurrently filed.

In light of the above, immediate judicial intervention is required in order to preserve the status quo pending Mr. Singh's case being decided on its merits.

## 2. Legal Standard

In determining whether the grant a preliminary injunction, the court balances the respective equities of the parties and concludes that pending trial on the merits, the defendant should or should not be restrained from exercising the right claimed by him. Continetal Banking v. Katz, 68 Cal. 2d 512, 528.  The general purpose of such an injunction is preservation of the status quo until a final determination of the merits of the action.  Id., *citing* Stewart v. Superior Court, (1893) 100 Cal. 543, 545.  Thus, the court examines all of the material before it in order to consider whether a greater injury will result to the defendant from granting the inunction than to the plaintiff from refusing it.  Id.

2

1  In making that determination the court will
2 consider the probability of the plaintiff's ultimately
3 prevailing in the case and will deny the preliminary
4 injunction unless there is a reasonable probability
5 that plaintiff will be successful in the assertion of
6 his rights.  Id.  "In the last analysis, the trial
7 court must determine which party is the more likely to
8 be injured by the exercise of its discretion.  Id.,
9 *citing* Family Record Plan, Inc. v. Mitchell (1959) 172
10 Cal. App. 2d 235, 242.
11  Here, the court looks to the law at issue:
12 **California's Homeowners' Bill of Rights**.  That law
13 provides that "It is the intent of the Legislature that
14 the mortgage servicer offer the borrower a loan
15 modification or workout plan if such a plan is
16 consistent with its authority." California *Civil Code*
17 § 2923.6(b).  If a borrower submits financials toward a
18 loan modification effort, then the
19 servicer/beneficiary/bank shall not conduct a trustee's
20 sale while the application is pending and the servicer
21 must make a written determination that the borrower is
22 ineligible.  *Civil Code* § 2923.6(c).
23  Also under this new law, the mortgage servicer
24 must establish a single point of contact and provide
25 one or more direct means of communication with the
26 single point of contact.  Civil Code § 2923.7(a).  That
27 contact shall be responsible for communicating the
28 process for foreclosure prevention alternatives and

coordinating receipt of all documents associated with same. *Id*. at (b)(1). Further, that point of contact shall have access to all current information and timely provide same to adequately inform the borrower. *Id.*, (b)(2) and (3).

Finally, the lender/servicer is required to inform the borrower in writing that the modification proposal has been rejected or is no longer being considered before it may proceed with foreclosure. *Civil Code* §2923.6(b).

The principles of equity apply to foreclosure sales. Equity does not allow one to take advantage of his own wrong nor will it assist in perpetration of fraud on another or the public. Bowman v Bowman, 125 Cal. App. 602 (1932). A party cannot take advantage of his own fault or wrong. Archibald Estate v. Matteson, 5 Cal. App. 441 (1907) Courts may set aside a foreclosure sale when there has been fraud, when the sale has been improperly, unfairly, or unlawfully conducted, or when there has been such a mistake that it would be inequitable to let stand. Bank of America Nat. Tmst & Savings Ass'n v. Reidy, 15 Cal 2d 243, 248 (1940); Whitman v. Transtate Titie Co. , 165 Cal.App.3d 312, 322-323 (1985).

### 3. Legal Analysis

As stated in the concurrently-filed declaration of Mr. Singh, as well as the Verified Complaint herein, Mr. Singh has been residing at his home with his wife and three children since 2005. He initially defaulted on his loan during the fallout from the Great Recession of 2008. Subsequently, Mr. Singh sought bankruptcy protection under Chapter 7. That bankruptcy was discharged on December 14, 2012.

### A. Plaintiff is Likely to Prevail On The Merits

Regardless, during approximately the past year, <u>Mr. Singh and Bank of America have been actively involved in loan modification negotiations</u>. These essentially took the form of requests for information by Bank of America, timely responses by Mr. Singh providing the requested information, then a period of inaction, then follow-up communications from Mr. Singh, then any one of a litany of excuses from the bank for why the papers were not "processed" or the information needed to be resubmitted. Then the cycle would begin anew.

Most importantly, Mr. Singh was never provided with anything in writing from Bank of America that it had ceased considering him for a modification, or that it had rejected or denied the modification. This runs categorically afoul of the Homeowners Bill of Rights, codified at California *Civil Code* §2923.6(b).

5

Under these facts, and as set forth in the California law quoted above, the bank's actions are clearly violative of the Homeowners' Bill of Rights. This is because they constitute "dual tracking" by utilizing the deceptive shell game tactic of providing a borrower with multiple points of contact and proceeding with foreclosure without first informing the borrower that modification efforts have proven fruitless.  Thus, under the clear meaning of California law and the facts presented, plaintiff has demonstrated a clear probability of prevailing on the merits.

**B.   The Balance of Equities Tips Sharply Toward Plaintiff**

In this matter the relative hardship to Ms. McVey - losing his family home - represents irreparable injury, decreasing Ms. McVey's requirement of showing a probability of success on the merits. The loss of one's property due to foreclosure unquestionably constitutes an irreparable injury. Demarest v Quick Loan Fund, Inc. 2009 WL 940377 (CD. Cal 2009); Wrobel v. S.L. Pope & Associates, 2007 WL 2345036 at 1 (S.D. Cal 2007) ("Losing one's home through foreclosure is an irreparable injury."), Bland v Carone Family Trust, 2007 WL 951344, at 2 (S.D. Cal.2007). Numerous courts have found this injury enough by itself to mandate preliminary injunctive relief See, e.g.

1  <u>Nichols v. Deutsche Bank Nat. Trust Co.</u>, 2007 WL
2  4181111, at 2 (S.D. Cal.2007); <u>United Church of Med.</u>
3  <u>Ctr. v. Med Ctr. Comm. 'n</u>, 689 F 2d 693, 701 (7"" Cir.
4  1982); <u>Johnson v. U.S. Dept. of Agriculture</u>, supra, at
5  789.
6      Here, the balance of equities tips heavily in
7  favor of Mr. Singh.  This is due in no small part to
8  the fat that the Great Recession also threatened to
9  claim a number of banks, including Bank of America.
10 However, our federal government provided Bank of
11 America with $45 billion dollars to prevent it from
12 sliding into insolvency. Since thirty-three cents of
13 every dollar Kevin Singh earned went to our federal
14 government in the form of tax, it stands to reason that
15 in a very real sense, Mr. Singh paid to save Bank of
16 America when our economy experienced turbulence.
17     Moreover, if plaintiff fails to receive an
18 injunction and his home is sold, it will be an
19 unmitigated disaster for himself and his family.  Mr.
20 Singh, his wife, and their three young children would
21 be rendered homeless.  Also, Mr. Singh runs his
22 painting business through the garage of his home.
23 Thus, if he is ejected it would spell the end of the
24 business and the only means by which Mr. Singh can
25 support himself and his family.  See <u>Singh Declaration</u>,
26 concurrently filed.
27
28 **C.   No Bond Should Be Required**

7

1     Courts have broad discretion in determining the
2 amount of a bond. See Connecticut Gen. Life Ins Co. v.
3 New Images of Beverly Hills, 321 F.3d 878, 882 (9th
4 Cir.2003).  The Court may dispense with the filing of a
5 bond when it concludes there is no realistic likelihood
6 of harm to the Defendant from enjoining his or her
7 conduct." Jorgensen v. Cassidy, 320 F.3d 906, 919 (9th
8 Cir. 2003).
9     Here, there is no realistic harm to Defendants
10 from a restraint of the foreclosure proceedings and
11 trustee's sale. If the Defendants' position that the
12 loans were valid correct, then the loans are adequately
13 by the very property in question; additional security
14 if neither appropriate nor warranted.  Phleger v.
15 Countrywide Home Loans, Inc., 2007 WL 4105672 at 6
16 (N.D. Cal. 2007). A bond is neither necessary nor
17 required in this case. If a bond is necessary, Mr.
18 Singh prays that the bond be set at one dollar ($1.00).
19
20 **D.   Notice**
21     With respect to notice, as detailed in the
22 accompanying declaration of Aldon L. Bolanos, Esq.,
23 exhaustive efforts were made to put the bank on notice
24 of these proceedings.  This included hand-delivering
25 the documents to the local branch manager, several
26 blocks from the federal courthouse.  They also include
27 providing the documents to opposing counsel at the
28 Bryan Cave law firm, which telephoned plaintiff's

8

counsel and stated it represented Bank of America in these proceedings. Finally, the documents were faxed to the "Home Loan Team" at Bank of America's Houston office, using a fax number provided again in the bank's own correspondence to Mr. Singh. Thus, it is clear that all reasonable and diligent efforts were made to ensure that the bank was on notice of this proceeding.

**4. Conclusion**

Mr. Singh has shown irreparable harm and a likelihood of prevailing on the merits, given what appears to be a clear violation of California law. Additionally, he has made exhaustive efforts to inform the defendant of this hearing. For this reason, it is respectfully submitted that he has met his burden and satisfied the requirements for a Temporary Restraining Order as set forth in the applicable case law and this court's own local rules.

Respectfully Submitted,
Law Offices of Aldon L. Bolanos
Dated: April 24, 2013
By: ***/s/ Aldon L. Bolanos, Esq.***
Attorney for Plaintiff