**BRYAN CAVE, LLP**
C. Scott Greene, California Bar No. 277445
Thomas S. Lee, California Bar No. 275706
Michael J. Peng, California Bar No. 260852
560 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone:    (415) 675-3400
Facsimile:    (415) 675-3434
E-mail:       scott.greene@bryancave.com
              tom.lee@bryancave.com
              pengm@bryancave.com

Attorneys for Defendants
BANK OF AMERICA, N.A., and RECONTRUST COMPANY, N.A.

# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN SINGH, | Case No. 2:13-cv-00729-MCE-AC |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | [REQUEST FOR TELEPHONIC APPEARANCE] |
| BANK OF AMERICA, N.A.; RECONTRUST COMPANY, N.A. | *Chief Judge Morrison C. England, Jr.* |
| Defendants. | Date:    April 29, 2013<br>Time:    10:00 a.m.<br>Courtroom:    7 |
| | Action Filed:    April 15, 2013<br>Trial Date:    Not Assigned |

136120.1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff Kevin Singh ("Plaintiff") seeks a preliminary injunction to prevent the foreclosure sale of real property located at 2544 Pheasant Hollow Drive, West Sacramento, California. Plaintiff's Motion for Preliminary Injunction should be denied.  Significantly, this Court does not have jurisdiction because there is no complete diversity amongst the parties.  Further, Plaintiff has an adequate remedy at law.  For these reasons, Plaintiff should not be granted injunctive relief.  If injunctive relief is granted, the Court should order Plaintiff to post a bond.

## II.  THERE IS NO DIVERSITY JURISDICATION

Plaintiff's Complaint alleges that "[j]urisdiction is proper because this case involves an amount at issue greater than seventy-five thousand dollars, and there exists complete diversity as between the parties to his suit."  (Compl. ¶ 1.)

Under 28 U.S.C. § 1332(a), diversity jurisdiction exists where the amount in controversy exceeds $75,000 and no defendant party shares citizenship in the same state as the plaintiff. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (citing *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806)).  For the purposes of diversity jurisdiction, national banking associations are "deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348.  A national banking association is "located" in "the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (construing 28 U.S.C. § 1348).

Here, ReconTrust's Amended Articles of Association identify the main office as being located in Simi Valley, California. *See Bedalla v. Bank of America, N.A.,* No. 12-cv-02307-RMW (N.D Cal. 2012) ("ReconTrust is a national banking association with its designated main office in Simi Valley, California.")  (Attached hereto as Exhibit A is a true and correct copy of ReconTrust's Amended Articles of Association.)  Therefore, ReconTrust is a citizen of California for purposes of diversity jurisdiction and there is not complete diversity as Plaintiff alleges. *Id.*  Accordingly, this Court has no jurisdiction over this matter and, for this reason alone, Plaintiff's Motion for Preliminary Injunction should be denied. *Id.*

1

136120.1

## III. INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE PLAINTIFF HAD AN ADEQUATE REMEDY AT LAW

Plaintiff's request for an injunction should also be denied because an adequate remedy at law existed and was available to Plaintiff prior to filing this Motion. California Civil Code section 2924 et. seq. provides "a comprehensive framework for the regulation of a non-judicial foreclosure sale pursuant to a power of sale contained in a deed of trust." *Moeller v. Lien*, 25 Cal. App. 4th 807, 822 (1994). In *Moeller*, the Court held that injunctive relief would be "inconsistent with the comprehensive and exhaustive statutory scheme regulating non-judicial foreclosures" *Id.* at 821.

Under this framework, Plaintiff had the statutory right to reinstate his loan following receipt of the Notice of Default: "[A]t any time prior to entry of the decree of foreclosure, [borrower] may pay to the beneficiary or the mortgagee or their successors in interest, respectively, the entire amount due, at the time payment is tendered . . . ." Cal. Civ. Code § 2924c(1). Where a borrower pays the amount due, the loan is reinstated and the foreclosure is rescinded. Cal. Civ. Code § 2924c(2).

Plaintiff had an adequate remedy at law: reinstatement. His request for an injunction against foreclosure should be denied.

## IV. IF AN INJUNCTION IS GRANTED, PLAINTIFF MUST POST A BOND

If the Court is inclined to grant the Preliminary Injunction, Plaintiff must post an injunction bond "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FRCP 65 (c). A court's failure to require a bond upon issuing injunctive relief is reversible error. *Hoechst Diafoil Co. v. Nan Ya Plastics, Corp.,* 174 F3d 411, 421 (4th Cir. 1999).

Here, if the Court is inclined to permit injunctive relief, the order should require Plaintiff to make monthly bond payments in the amount of $2,700 to cover his monthly payments due on his loan.

136120.1

## V. **CONCLUSION**

For the reasons and authorities set forth above, Plaintiff's request for a preliminary injunction should be denied. If the Court grants a preliminary injunction, Plaintiff should be ordered to make monthly payments.

Dated: April 25, 2013    **BRYAN CAVE LLP**

By: /s/ *Michael J. Peng*
Michael J. Peng
Attorneys for Defendants
BANK OF AMERICA, N.A., and
RECONTRUST COMPANY, N.A.

136120.1

# EXHIBIT A

# Amended Articles of Association

# ReconTrust Company, National Association

For the purpose of organizing an association to perform any lawful activities of national banks, the undersigned enter into the following Amended Articles of Association:

**FIRST.** The title of this association, a national trust bank, shall be ReconTrust Company, National Association.

**SECOND.** The main office of the association shall be located in the City of Simi Valley, County of Ventura, and State of California. The general business of the association shall be conducted at its main office and such offices as it may establish. The business of the association will be limited to acting as a trustee under deeds of trust; processing foreclosures on real estate loans in default; processing lien releases, reconveyances, satisfactions, and discharges on real estate loans that have been paid off; performing post-closing lien modifications, partial releases, and subordination activities; providing document custody services; and conducting other activities incidental to the exercise of these powers. The association may not expand or alter its business beyond that stated in this article without the prior written approval of the Office of the Comptroller of the Currency.

**THIRD.** The board of directors of this association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full board of directors or by resolution of a majority of the shareholders approved at any annual or special meeting thereof, or by unanimous written consent. Each director shall own common or preferred stock of the association or of a holding company directly or indirectly owning or controlling the association, with either an aggregate par, fair market, or equity value of $1,000. Determination of these values may be based as of either (i) the date of purchase, or (ii) the date the person became a director, whichever value is greater. Any combination of common or preferred stock of the association or holding company may be used.

Any vacancy in the board of directors may be filled by action of a majority of the remaining directors between meetings of shareholders. The board of directors may not increase the number of directors between meetings of shareholders to a number which: (1) exceeds by more than two the number of directors last elected by shareholders when the number was 15 or less; or (2) exceeds by more than four the number of directors last elected by shareholders where the number was 16 or more, but in no event shall the number of directors exceed 25.

Terms of directors, including directors selected to fill vacancies, shall expire at the next regular meeting of shareholders at which directors are elected, unless they resign or are removed from office. Despite the expiration of a director's term, the director shall continue to serve until his or her successor is elected and qualifies or until there is a decrease in the number of directors and his or her position is eliminated.

Honorary or advisory members of the board of directors, without voting power or power of final decision in matters concerning the business of the association, may be appointed by resolution of

a majority of the full board of directors, or by resolution of shareholders at any annual or special meeting, or by unanimous written consent. Honorary or advisory directors shall not be counted to determine the number of directors of the association or the presence of a quorum for any board action, and shall not be required to own qualifying shares.

**FOURTH.** There shall be an annual meeting of the shareholders to elect directors and transact whatever other business may be brought before the meeting. It shall be held at the main office or any other convenient place the board of directors may designate, on the day of each year specified therefore in the Bylaws, or if that day falls on a legal holiday in the state in which the association is located, on the next following banking day. If no election is held on the day fixed or in the event of a legal holiday on the following banking day, an election may be held on any subsequent day within 60 days of the day fixed, to be designated by the board of directors, or, if the directors fail to fix the day, by shareholders representing two-thirds of the shares issued and outstanding. In all cases at least 10 days advance notice of the meeting shall be given to the shareholders by first class mail.

In all elections of directors, the number of votes cast by each common shareholder will be determined by multiplying the number of shares he or she owns by the number of directors to be elected. Those votes may be cumulated and cast for a single candidate or may be distributed among two or more candidates in the manner selected by the shareholder. If, after the first ballot, subsequent ballots are necessary to elect directors, a shareholder may not vote shares that he or she has already fully cumulated and voted in favor of a successful candidate. On all other questions, each common shareholder shall be entitled to one vote for each share of stock held by him or her.

A director may resign at any time by delivering written notice to the board of directors, its chairperson, or to the association, which resignation shall be effective when the notice is delivered unless the notice specifies a later effective date.

A director may be removed by shareholders at a meeting called to remove him or her, when notice of the meeting states that the purpose or one of the purposes is to remove him or her, if there is a failure to fulfill one of the affirmative requirements for qualification, or for cause, provided that, however, a director may not be removed if the number of votes sufficient to elect him or her under cumulative voting is voted against his or her removal.

**FIFTH.** The authorized amount of capital stock of this association shall be 10,000 shares of common stock of the par value of $1.00 each; but said capital stock may be increased or decreased from time to time, according to the provisions of the laws of the United States.

No holder of shares of the capital stock of any class of the association shall have any preemptive or preferential right of subscription to any shares of any class of stock of the association, whether now or hereafter authorized, or to any obligations convertible into stock of the association, issued, or sold, nor any right of subscription to any thereof other than such, if any, as the board of directors, in its discretion may from time to time determine and at such price as the board of directors may from time to time fix.

Unless otherwise specified in the Articles of Association or required by law, (1) all matters requiring shareholder action, including amendments to the Articles of Association must be approved by shareholders owning a majority voting interest in the outstanding voting stock, and (2) each shareholder shall be entitled to one vote per share.

Unless otherwise specified in the Articles of Association or required by law, all shares of voting stock shall be voted together as a class, on any matters requiring shareholder approval. If a proposed amendment would affect two or more classes or series in the same or a substantially similar way, all the classes or series so affected, must vote together as a single voting group on the proposed amendment.

The rights, preferences, privileges and restrictions of the common stock of the association are as follows:

Dividend Rights. After the requirement with respect to preferential dividends upon all classes and series of capital stock entitled thereto shall have been paid or declared and set apart for payment and after the association shall have complied with all requirements, if any, with respect to the setting aside of sums as a sinking fund or for a redemption account on any class of capital stock, than and not otherwise, the holders of common stock shall be entitled to receive, subject to the applicable provisions of law, such dividends as may be declared from time to time by the board of directors.

Liquidation Rights. After distribution in full of the preferential amounts to be distributed to the holders of all classes and series of capital stock entitled thereto in the event of a voluntary or involuntary liquidation, dissolution or winding up of the association ratably in proportion to the number of shares of common stock held by each.

Voting Rights. Each share of common stock will entitle the holders thereof to one vote on all matters, except that in connection with the election of directors, holders of common stock shall be entitled to cumulate votes in the manner and to the extent provided by law.

Shares of one class or series may be issued as a dividend for shares of the same class or series on a pro rata basis and without consideration. Shares of one class or series may be issued as share dividends for a different class or series of stock if approved by a majority of the votes entitled to be cast by the class or series to be issued, unless there are no outstanding shares of the class or series to be issued. Unless otherwise provided by the board of directors, the record date for determining shareholders entitled to a share dividend shall be the date authorized by the board of directors for the share dividend.

Unless otherwise provided in the Bylaws, the record date for determining shareholders entitled to notice of and to vote at any meeting is the close of business on the day before the first notice is mailed or otherwise sent to the shareholders, provided that in no event may a record date be more than 70 days before the meeting.

If a shareholder is entitled to fractional shares pursuant to preemptive rights, a stock dividend, consolidation or merger, reverse stock split or otherwise, the association may: (a) issue fractional shares; (b) in lieu of the issuance of fractional shares, issue script, or warrants entitling the holder to receive a full share upon surrendering enough script or warrants to equal a full share; (c) if

there is an established and active market in the association's stock, make reasonable arrangements to allow the shareholder to realize a fair price through sale of the fraction, or purchase of the additional fraction required for a full share; (d) remit the cash equivalent of the fraction to the shareholder; or (e) sell full shares representing all the fractions at public auction or to the highest bidder after having solicited and received sealed bids from at least three licensed stock brokers; and distribute the proceeds pro rata to shareholders who otherwise would be entitled to the fractional shares. The holder of a fractional share is entitled to exercise the rights for shareholders, including the right to vote, to receive dividends, and to participate in the assets of the association upon liquidation, in proportion to the fractional interest. The holder of script or warrants is not entitled to any of these rights, unless the script or warrants explicitly provide for such rights. The script or warrants may be subject to such additional conditions as: (1) that the script or warrants will become void if not exchanged for full shares before a specified date; and (2) that the shares for which the script or warrants are exchangeable may be sold at the option of the association and the proceeds paid to scriptholders.

The association, at any time and from time to time, may authorize and issue debt obligations, whether or not subordinated, without the approval of the shareholders. Obligations classified as debt, whether or not subordinated, which may be issued by the association without the approval of shareholders, do not carry voting rights on any issue, including an increase or decrease in the aggregate number of the securities, or the exchange or reclassification of all or part of securities into securities of another class or series.

**SIXTH.** The board of directors shall appoint one of its members president of this association, and one of its members chairperson of the board and shall have the power to appoint one or more vice presidents, a secretary who shall keep minutes of the directors' and shareholders' meetings and be responsible for authenticating the records of the association, and such other officers and employees as may be required to transact the business of this association. A duly appointed officer may appoint one or more officers or assistant officers if authorized by the board of directors according to the Bylaws.

The board of directors shall have the power to:

(1) Define the duties of the officers, employees, and agents of the association.

(2) Delegate the performance of its duties, but not the responsibility for its duties, to the officers, employees, and agents of the association.

(3) Fix the compensation and enter into employment contracts with its officers and employees upon reasonable terms and conditions consistent with applicable law.

(4) Dismiss officers and employees.

(5) Require bonds from officers and employees and to fix the penalty thereof.

(6) Ratify written policies authorized by the association's management or committees of the board.

(7) Regulate the manner in which any increase or decrease of the capital of the association shall be made, provided that nothing herein shall restrict the power of shareholders to increase or decrease the capital of the association according to law,

and nothing shall raise or lower from two-thirds the percentage required for shareholder approval to increase or reduce the capital.

(8) Manage and administer the business and affairs of the association.

(9) Adopt initial Bylaws, not inconsistent with law or the Articles of Association, for managing the business and regulating the affairs of the association.

(10) Amend or repeal the Bylaws, except to the extent that the Articles of Association reserve this power in whole or in part to shareholders.

(11) Make contracts.

(12) Generally perform all acts that are legal for a board of directors to perform.

**SEVENTH.** The board of directors shall have the power to change the location of the main office to any authorized branch within the limits of Simi Valley without the approval of the shareholders, or with a vote of shareholders owning two-thirds of the stock of such association for a relocation outside such limits and upon receipt of a certificate of approval from the Comptroller of the Currency, to any other location within or outside the limits of Simi Valley, but not more than 30 miles beyond such limits. The board of directors shall have the power to establish or change the location of any branch or branches of the association to any other location permitted under applicable law, without approval of shareholders, subject to approval by the Comptroller of the Currency.

**EIGHTH.** The corporate existence of this association shall continue until termination according to the laws of the United States.

**NINTH.** The board of directors of this association, the chairperson of the board, the president or the holders of shares entitled to cast, in the aggregate, not less than ten percent (10%) of the votes at the meeting, may call a special meeting of shareholders at any time. Unless otherwise provided by the Bylaws or the laws of the United States, or waived by shareholders, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least 10, and no more than 60, days prior to the date of the meeting to each shareholder of record at his/her address as shown upon the books of this association. Unless otherwise provided by the Bylaws, any action requiring approval of shareholders must be affected at a duly called annual or special meeting.

**TENTH.** To the extent permitted by applicable law and regulation, including 12 USC 1828(k), and these Articles of Association:

(1) the personal liability of the directors of the association for monetary damages in an action brought by or in the right of the corporation for breach of a director's duties to the corporation and its shareholders shall be eliminated, provided, however, liability shall not be eliminated (i) for acts or omissions that involve intentional misconduct or a knowing and culpable violation of law, (ii) for acts or omissions that a director believes to be contrary to the best interests of the corporation or its shareholders or that involve the absence of good faith on the part of the director, (iii) for any transaction from which a director derived an improper personal benefit, (iv) for acts or omissions that show a reckless disregard for the director's duty to the association or

its shareholders in circumstances in which the director was aware, or should have been aware, in the ordinary course of performing a director's duties, of a risk of serious injury to the association or its shareholders, (v) for acts or omissions that constitute an unexcused pattern of inattention that amounts to an abdication of the director's duty to the association or its shareholders, (vi) in connection with the transactions described in Section 310 of the California General Corporation Law if this association were a California corporation, (vii) for any act or omission occurring prior to the date when this provision becomes effective, and (viii) for any act or omission as an officer, notwithstanding that the officer is also a director or that his or her actions, if negligent or improper, have been ratified by the directors.

(2) the association is authorized to provide indemnification of agents (as defined in Section 317 of the California General Corporation Law) through bylaw provisions, agreements with agents, vote of shareholders or disinterested directors, or otherwise, to the maximum extent permitted by the California General Corporation Law and in excess of the indemnification otherwise permitted by Section 317 of the California General Corporation Law, subject to the applicable limits set forth in Section 204 of the California General Corporation Law with respect to action for breach of duty to the association or its shareholders.

The association may make or agree to make indemnification payments to an institution-affiliated party, as defined at 12 USC 1813(u), for an administrative proceeding or civil action initiated by any federal banking agency, that are reasonable and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder.

The association may indemnify an institution-affiliated party, as defined at 12 USC 1813(u), for damages and expenses, including the advancement of expenses and legal fees, in cases involving an administrative proceeding or civil action not initiated by a federal banking agency, in accordance with, and subject to the provisions of applicable federal law and regulation, these Articles of Association and the California General Corporation Law, provided such payments are consistent with safe and sound banking practices.

Notwithstanding any other provisions contained herein, this Article TENTH is subject to the requirements and limitations set forth in state and federal laws, rules and regulations, and orders regarding indemnification and prepayment of legal expenses and liabilities, including Section 18(k) of the Federal Deposit Insurance Act and Part 359 of the FDIC's Rules and Regulations or any successor regulations thereto. To the extent that there is any conflict between state and federal law, federal law shall supersede and control.

**ELEVENTH.** These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of the holders of such greater amount. The association's board of directors may propose one or more amendments to the Articles of Association for submission to the shareholders.

**IN WITNESS WHEREOF,** we have hereunto set our hands effective as of the 1st day of July, 2010.

**RECONTRUST COMPANY, NATIONAL ASSOCIATION**

**DIRECTORS**

*/s/ Mary K. Kanaga*
_____
Mary K. Kanaga

_____
Mark K. Ulmer

_____
Marvin R. Chiddick

_____
Marc Fisher

_____
Catherine A. Kaiser

_____
Kenneth L. Mertzel

**IN WITNESS WHEREOF,** we have hereunto set our hands effective as of the 1st day of July, 2010.

**RECONTRUST COMPANY, NATIONAL ASSOCIATION**

**DIRECTORS**

_____
Mary K. Kanaga

_____/s/ Mark K. Ulmer_____
Mark K. Ulmer

_____
Marvin R. Chiddick

_____
Marc Fisher

_____
Catherine A. Kaiser

_____
Kenneth L. Mertzel

IN WITNESS WHEREOF, we have hereunto set our hands effective as of the 1st day of July, 2010.

**RECONTRUST COMPANY, NATIONAL ASSOCIATION**

**DIRECTORS**

_____
Mary K. Kanaga

_____
Mark K. Ulmer

_____
Marvin R. Chiddick

_____
Marc Fisher

_____
Catherine A. Kaiser

_____
Kenneth L. Mertzel

IN WITNESS WHEREOF, we have hereunto set our hands effective as of the 1st day of July, 2010.

**RECONTRUST COMPANY, NATIONAL ASSOCIATION**

**DIRECTORS**

_____
Mary K. Kanaga

_____
Mark K. Ulmer

_____
Marvin R. Chiddick

_____ *[signed]*
Marc Fisher

_____
Catherine A. Kaiser

_____
Kenneth L. Mertzel

**IN WITNESS WHEREOF,** we have hereunto set our hands effective as of the 1st day of July, 2010.

**RECONTRUST COMPANY, NATIONAL ASSOCIATION**

**DIRECTORS**

_____
Mary K. Kanaga


_____
Mark K. Ulmer


_____
Marvin R. Chiddick


_____
Marc Fisher


_____*Catherine A Kaiser*_____
Catherine A. Kaiser


_____
Kenneth L. Mertzel